SOUTHERN CREDIT CORPORATION *v.*
J. CLARY ATKINSON, SHERIFF OF DALLAS COUNTY

73-130                                502 S.W. 2d 497

Opinion delivered December 3, 1973
[Rehearing denied January 14, 1974.]

*James R. Howard,* for appellant.

*Lawson E. Glover* and *David M. Glover,* for appellee.

LYLE BROWN, Justice. By this suit appellant sought judgment against appellee for failure to make and file a return on an execution issued out of the Hot Spring County Circuit Court. The execution was directed to the sheriff of Dallas County because the judgment debtor resided in that county. Appellant filed a motion for summary judgment, which was denied. Then at the trial of the case appellant moved for a directed verdict, which was likewise denied. The jury returned a verdict for appellee and appellant here contends the trial court erred

(1) in not granting the motion for summary judgment, and (2) in denying its motion for a directed verdict.

The court was correct in denying the motion for summary judgment. Counter affidavits were filed by appellee in which it was sworn that the execution was actually served, a return made thereon, and mailed to appellant's attorney. That allegation, as we shall later discuss in more detail, raised a justiciable issue for the jury.

An abridgment of the brief testimony is necessary to an understanding of our holding on appellant's other point, namely, that it was entitled to an instructed verdict. The circuit clerk's record was introduced to show that a judgment was entered in the case of Southern Credit Corp. v. Bobby Erwin, that an execution thereon was issued and was never returned. Appellee, the sheriff, was called by appellant. He testified that the execution was sent to him by appellant's attorney; that he received two copies; that he made his return on one copy and mailed it to the attorney who sent it to him. The first witness for appellee was Dan Buford, a deputy sheriff in Dallas County. He said he accompanied the sheriff to the home of Bobby Erwin in Fordyce; that they found nothing on which to levy; that they returned to the sheriff's office; that Buford made out a bill for the cost of levying the execution; that the sheriff made out the return; and that the bill and the execution document were placed in an envelope and dropped in the mail basket in the sheriff's office. Bobby Erwin testified that the sheriff and his deputy came to his home with the execution, serving a copy thereof on him, but that he had no property on which to levy. Sheriff Atkinson testified he received the execution in the mail from attorney Howard from Little Rock and within a few days went to the home of Erwin, along with his deputy, and served the execution; that he found no property on which to levy; that he made a return on one of the copies and mailed it along with Deputy Buford's bill to attorney Howard. "I mailed it back to him because I received it from him. I usually do that. Most lawyers like to see what is on the return. I usually go ahead and serve the papers and then bill

the attorney for it. I was paid for the service of this execution." In other words appellee was saying he mailed the execution and the bill for services in the same envelope and attorney Howard responded by sending back a check for the service.

At the close of appellant's (plaintiff's) case, plaintiff made a motion which is usually made by defendant—motion for a directed verdict. In the first place, the sheriff, as appellant's witness, testified that he mailed the execution to appellant's attorney, from whom the sheriff received the execution. That testimony, absent explanation, could have caused the jury to conclude that the failure to file the execution with the clerk was caused by appellant's attorney. In the second place, "a directed verdict for the plaintiff is a rarity". *Hales & Hunter Co.* v. *Wyatt,* 239 Ark. 19, 386 S.W. 2d, 704 (1965). "A directed verdict at the close of the plaintiff's evidence should be sparingly granted". *Jeanes* v. *Milner,* 428 F. 2d 598 (1970); *Spink* v. *Mourton,* 235 Ark. 919, 362 S.W. 2d 665 (1962).

Appellant's final argument is that it should have been granted a directed verdict at the close of all the evidence. That is based on the theory that the failure of the sheriff to return the execution to the clerk within the time required by statute, is not excusable in the law. Ark. Stat. Ann. § 30-431 (Repl. 1962) says: "All executions shall be returnable sixty days from their date". Ark. Stat. Ann. § 29-208 (Repl. 1962) says judgment shall be rendered for the plaintiff against a sheriff for failure to return an execution. Many of our early cases literally interpreted and strictly enforced the quoted statutes. For example, see *Herr & Co.* v. *Atkinson,* 40 Ark. 377 (1882); *Jett* v. *Shinn,* 47 Ark. 373, 1 S.W. 693 (1885). In cases subsequent to those cited, our court has somewhat receded from its original "hard line" attitude. One of the leading examples is the case of *Bickham* v. *Kosminsky,* 74 Ark. 413, 86 S.W. 292 (1905). Kosminsky sued Sheriff Bickham and his sureties for failure of the sheriff to return an execution within the statutory period. The defendants answered that the attorney for the plaintiffs in connection with the judgment had insisted that the sheriff hold the execution beyond

the statutory period. The court sustained a demurrer to the answer. This court reversed, holding that the answer presented a good defense. This court said:

> Those who propose to invoke against officers the severe penalties of the statute upon which this motion is based must be careful to do nothing which directly or indirectly contributes to the omission of duty complained of. *Simms* v. *Quinn* 58 Miss. 221. This statement may reach further than was contemplated in *Jett* v. *Shinn,* but it well illustrates the application of the rule announced in *Jett* v. *Shinn,* that the act or instructions of the party in interest in preventing the return is a defense to the officer.

> The plaintiff in execution has a right to control the execution by himself or attorney, and, having such right, the officer must follow his instructions.

> This authority of the plaintiff must not be exercised to cause the sheriff to omit a statutory duty; but if it does cause him to do it, the plaintiff cannot take advantage of it.

In a somewhat similar state of facts, the trial court held that the failure of the sheriff to return the execution was due to the instructions of the plaintiff. *Wilkerson* v. *Mobley,* 152 Ark. 124, 237 S.W. 726 (1922). This court affirmed and said:

> The statute in question is highly penal, and a party invoking it must bring himself within both the letter and spirit of it. Therefore, he can do nothing which directly or indirectly contributes to the omission of the duty complained of and still hold the sheriff answerable under the statute.

The latest pronouncement on the question which has come to our attention is *Hamilton* v. *Pan American Southern Corp.,* 238 Ark. 38, 378 S.W. 2d 652 (1964). There we said: "In dealing with a statute of this kind it is well established by our decisions that it 'must be strictly construed in favor of those upon whom the burden is sought to be imposed'".

We summarize the undisputed evidence which we think made a justiciable issue of fact. Sheriff Atkinson testified that he received the execution from attorney Howard, not from the clerk; there was a cover letter which instructed the sheriff to mail his bill to the attorney; he mailed the execution and the bill to the attorney in the same envelope and there was a prompt return of a check for services; he mailed it to the attorney because he received it from the attorney (this fact is of considerable significance to us); and further, that was his custom in his nine terms in office because the lawyers wanted to see what was on the return. From the unchallenged facts it could have been reasonably deduced that the execution could have been lost in the attorney's office. Additionally, when the process was sent to the sheriff, not by the clerk, but by the attorney, the latter may have contributed, indirectly at least, to the sheriff's returning the execution to the attorney. This is not to say that the attorney is subject to criticism because it is common knowledge that sheriffs ofttimes send their returns to counsel. And, of course, it goes without saying, we are not concluding that is what did in fact happen; we are only saying that the trier of facts could reasonably make such conclusions.

Affirmed.